IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JACOB DRUMMONDO-FARIAS (1),<br><br>Defendant. | CR. NO. 12-00174(1) JMS<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 363 |

### ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 363

### I. INTRODUCTION

Defendant Jacob Drummondo-Farias ("Defendant") has filed an emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), asking the court to grant immediate release to avoid confinement at the Federal Correctional Institute Terminal Island ("FCI Terminal Island") due to the COVID-19 pandemic. *See* ECF No. 363 at PageID #3337. The court decides the motion without a hearing under Local Rule 7.1(c). Based on the following, the court DENIES the motion.

///

///

1

## II. BACKGROUND

On November 14, 2013, a jury found Defendant guilty of violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (conspiracy to distribute and possession with intent to distribute 50 grams or more of methamphetamine). ECF Nos. 240, 259. On February 27, 2014, the court sentenced him to a 324-month (27-year) term of imprisonment. ECF No. 259 at PageID #1362. On August 5, 2015, the Ninth Circuit upheld his conviction and sentence, ECF No. 291, and the Supreme Court denied certiorari on January 27, 2016, ECF No. 302.

Defendant, proceeding pro se, filed his motion for compassionate release on April 22, 2020, ECF No. 363,[1] followed by a supplement received on May 1, 2020, ECF No. 365. On May 8, 2020, the Office of the Federal Public Defender for the District of Hawaii declined to represent Defendant in this matter. ECF No. 366. And on May 15, 2020, the United States filed its Opposition to the motion. ECF No. 368.

Defendant's motion alleges that COVID-19 cases have been confirmed at FCI Terminal Island, that inmates and staff have recently lost their

---

[1] The motion was filed in this court on April 28, 2020, ECF No. 363, but Defendant's certificate of service indicates he provided it to prison authorities on April 22, 2020, ECF No. 363-1. Under the "mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 276 (1998), the motion is deemed filed on April 22, 2020.

2

lives due to the virus, and that social distancing is difficult at the facility. *See* ECF No. 363 at PageID #3337. These allegations cannot be disputed. *See, e.g.*, *United States v. Fischman*, 2020 WL 2097615, at *2 (N.D. Cal. May 1, 2020) ("As of [May 1, 2020] . . . there have been 615 confirmed cases of COVID-19 out of a population of 1,051 total inmates [at FCI Terminal Island].").[2] He contends he fits the criteria for release because his primary offense was non-violent, he faces no detainer, he has had no incident reports in the past 12 months, and has "had impeccable conduct" since being incarcerated. ECF No. 363 at Page ID #3337. His motion states that he has family willing to help him with reentry. *Id.* His supplement then identifies a family member in Las Vegas for reentry or home confinement purposes, and implies that he has a COVID-19 risk factor of obesity. *See* ECF No. 365 at PageID #3344 ("According to the BMI scale 5'8-5'9 200 plus pounds is considered obese."). The record reflects that he is currently 37-years old. *See* ECF No. 258 at PageID #1327 (sealed presentence report).

      Defendant also states that he made requests for release to administrative staff and the warden on April 15, 2020 and April 21, 2020, and that

---

[2] The Bureau of Prisons ("BOP") reports, as of May 19, 2020, 111 inmates and 15 staff with "confirmed active cases" of COVID-19 at FCI Terminal Island, with 575 "inmates recovered." *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited May 19, 2020). FCI Terminal Island presently houses 1,042 inmates. *See* bop.gov/locations/institutions/trm/ (last visited May 19, 2020).

he has not received a response.  ECF No. 363 at PageID #3337; *see also* ECF No. 363-2 at PageID #3340 (handwritten "request to administrative staff and warden Ponce," dated "4-15-20," stating in part that "I believe the warden is able to give me a sentence reduction or early release.  [N]ow that covid-19 is here in this facility my health & life is in Danger. . . . I am requesting to be put on home confinement immediately to protect myself from this pandemic").  The government points out, however, that Defendant has no proof "that the letters were ever actually received by FCI-Terminal Island staff or even sent by Defendant."  ECF No. 368 at PageID #3355.

### III.  DISCUSSION

**A.  The Court Lacked Authority to Act When the Motion was Filed Because Defendant had not Exhausted Administrative Remedies.**

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018,[3] which provides in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the *defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the

---

[3] Pub. L. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

> term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
> >  (i) extraordinary and compelling reasons warrant such a reduction;
> > . . . .
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

*Id.* (emphasis added).

As emphasized, the statute allows a court to consider a request for release (without a motion from the BOP), only after an inmate (1) has "fully exhausted all administrative rights," or (2) after "the lapse of 30 days from the receipt of such a request by the warden . . . whichever is earlier." *Id.*

It is undisputed that Defendant had not fully exhausted the BOP's administrative process when Defendant's was motion was filed. Assuming Defendant's allegation that he made an administrative request on April 15, 2020 is true (and that it was received by the warden on that day), only 7 days had lapsed from that request until he filed this action by providing it to prison authorities at FCI Terminal Island on April 22, 2020. *See* ECF No. 363-1 (certificate of service attesting that Defendant provided the motion to authorities on April 22, 2020); *Houston*, 487 U.S. at 276 (setting forth the prisoner "mailbox" rule).

Courts are split on whether exceptions to that statutory exhaustion requirement are permitted. Some cases addressing compassionate relief requests based on COVID-19 have concluded that a court may itself waive § 3582(c)(1)(A)'s statutory requirement under certain circumstances. *See, e.g.*, *United States v. Livingston*, 2020 WL 1905202, at *1 (E.D.N.Y. Apr. 17, 2020) (concluding that "the crafting of judge-made exceptions to [the] statutory exhaustion requirement" is appropriate, but denying compassionate relief on the merits); *United States v. McCarthy*, 2020 WL 1698732, at *4 (D. Conn. Apr. 8, 2020) (granting relief after excusing exhaustion where it would be futile, inadequate, and unduly prejudicial) (applying *Washington v. Barr*, 925 F.3d 109, 120-21 (2d Cir. 2019)); *United States v. Perez*, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020) (applying *Washington*); *United States v. Ben-Yhwh*, 2020 WL 1874125, at *3 (D. Haw. Apr. 13, 2020) (relying on *McCarthy* and *Washington*).

But many others disagree. *See, e.g.*, *United States v. Hart*, 2020 WL 1989299, at *4 (S.D.N.Y. Apr. 27, 2020) ("This language does not leave room for court-made exceptions.") (citation omitted); *United States v. Dailey*, 2020 WL 2195926, at *2 (E.D. Cal. May 6, 2020) ("'The administrative exhaustion requirement admits of no exception.'") (quoting *United States v. Carver*, 2020 WL 1604968, at *1 (E.D. Wash. Apr. 1, 2020) (other citation omitted)); *United States*

*v. Cooper*, 2020 WL 2064066, at *3 (D. Nev. Apr. 29, 2020) ("[T]his court lacks the power to create [a special-circumstances exception]."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (reasoning that the "fail[ure] to comply with § 3582(c)(1)(A)'s exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release at this point").

After carefully examining the issue, this court follows the mandatory statutory language and therefore sides with the latter view—because Defendant had not exhausted administrative remedies, and 30 days had not passed after his request to the BOP, this court lacked authority to consider Defendant's motion when it was filed.  The court must apply *Ross v. Blake*, 136 S. Ct. 1850 (2016), which rejected a judicial "special circumstances" exception to the mandatory administrative exhaustion set forth in the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  *Id.* at 1858.  *Ross* reasoned that

> [J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions. . . .  But a statutory exhaustion provision stands on a different footing.  There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to.  For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.

*Id.* at 1857 (citations omitted).

*Ross* is directly on point. Here, as with the PLRA in *Ross*, § 3582(c)(1)(A) is a statutory exhaustion requirement—not a judicially-created requirement. Here, as with the PLRA in *Ross*, exhaustion is mandatory—nothing in the text of either statute suggests allowance for equitable or judicial exceptions. And here, as with the PLRA in *Ross*, the statute contains its *own* limitation "baked into its text," 136 S. Ct. at 1862—the PLRA only requires exhaustion of "available" remedies, and § 3582(c)(1)(A) permits a motion after "the lapse of 30 days from the receipt of [an inmate's] request by the warden of the defendant's facility." As with *Ross*, then, the statute "foreclose[es] judicial discretion." *Ross*, 136 S. Ct. at 1857.[4]

---

[4] *See also, e.g.*, *Shaw v. Bank of Am. Corp.*, 946 F.3d 533, 541 (9th Cir. 2019) ("[T]he Supreme Court has made clear that if exhaustion 'is a statutorily specified prerequisite'—as opposed to a judicially created one—'the requirement is something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility[.]'") (quoting *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975) (some editorial marks omitted)).

Again, this distinction between judicially-developed and statutory exhaustion requirements is critical. Some of the cases in which courts waived § 3582(c)(1)(A)'s exhaustion requirement on its own relied on the Second Circuit's opinion in *Washington*, 925 F.3d at 118, which set forth three factors a court can consider in waiving an exhaustion requirement. *See, e.g.*, *McCarthy*, 2020 WL 1698732, at *4; *Ben-Yhwh*, 2020 WL 1874125, at *3; *Perez*, 2020 WL 1546422, at *2. But *Washington* was analyzing a judicially-developed exhaustion doctrine—not a statutory regime. *See* 925 F.3d at 116 ("Although the [Controlled Substances Act] does not mandate exhaustion of administrative remedies, we agree with the court below that exhaustion here is consistent with congressional intent and is therefore appropriate."). In that sense, cases relying on *Washington* for the power of a court to waive § 3582(c)(1)(A) are simply inconsistent with *Ross*. *See, e.g.*, *United States v. Holden*, 2020 WL 1673440, at *9 (D. Or. Apr. 6, 2020) (finding "the court's reasoning in *Perez* to be unpersuasive because it is unsupported by law" because *Washington* examined a judicially-created exhaustion requirement).

This court also recognizes that other courts have focused on analyzing whether the exhaustion requirement in § 3582(c)(1)(A) is "jurisdictional" or merely a "claims-processing rule" subject to equitable exceptions. *See, e.g.*, *United States v. Connell*, 2020 WL 2315858, at *5 (N.D. Cal. May 8, 2020) (concluding, after a thoughtful and comprehensive analysis, that § 3582(c)(1)(A) is not jurisdictional and is thus subject to equitable exceptions, and granting compassionate release to a 69-year old inmate with weeks remaining on his sentence); *United States v. Guzman Soto*, 2020 WL 1905323, at *2-4 (D. Mass. Apr. 17, 2020) (similar jurisdictional analysis).[5]

Such cases, however, only answer part of the question, and—given *Ross*—ultimately do not resolve whether the court may waive exhaustion on its own. Even if § 3582(c)(1)(A) is only a "claims-processing rule," it remains a mandatory *statutory* requirement, "foreclosing judicial discretion" to waive exhaustion. *Ross*, 136 S. Ct. at 1857. Indeed, *Ross* analyzed the PLRA's exhaustion requirements which are themselves non-jurisdictional and are subject to waiver by prison authorities being sued. *See, e.g.*, *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747

---

[5] The government here also argues in part that the statute is jurisdictional, and the court thus lacks power to address the motion until Defendant exhausts administrative remedies. *See* ECF No. 368 at PageID #3358-60.

F.3d 1162 (9th Cir. 2014). Nevertheless, under *Ross*, "a timely asserted mandatory claim-processing rule must be strictly enforced by courts even though it is not a jurisdictional bar; *only where a claim-processing rule is judge-made can a court waive its requirements*." *United States v. Ogarro*, 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020) (emphasis added). That is, "it does not matter whether section 3582(c) is a jurisdictional statute or a non-jurisdictional claim-processing statute, because its exhaustion requirement is clearly statutory and therefore mandatory." *United States v. Ng Lap Seng*, 2020 WL 2301202, at *5 (S.D.N.Y. May 8, 2020) (citations omitted).[6]

## B. Assuming 30 Days Have Passed from Receipt of a Request by the Warden, the Court now has Authority to Decide the Motion.

The government argues that "Defendant has not demonstrated that he has exhausted his administrative remedies," ECF No. 368 at PageID #3356, because "there is no proof of service that the letters were ever actually received by FCI-Terminal Island staff or even sent by Defendant," *id.* at PageID #3355. It

---

[6] It appears, however, that the *government* may affirmatively waive § 3582(c)(1)(A)'s exhaustion requirement. *See, e.g.*, *United States v. Russo*, 2020 WL 1862294, at *5 (S.D.N.Y. Apr. 14, 2020) ("[O]ne key consequence of the section not being jurisdictional is that the Government can waive the affirmative defense of exhaustion.") (citations omitted); *United States v. Vence-Small*, 2020 WL 1921590, at *6 (D. Conn. Apr. 20, 2020) ("Although section 3582 does not expressly provide for a power of the Government to waive the exhaustion requirement, I would understand a statement by the Government that it waives exhaustion to be the equivalent of a motion by the Director of the BOP for sentence reduction just as section 3582(c)(1)(A) expressly allows."). But the government did not do so here.

"requests that this motion be dismissed pending Defendant's exhaustion of the requisite administrative remedy." *Id.* at 3356.

But as a practical matter, assuming that Defendant requested relief on April 15, 2020 as he says, 30 days have now passed while this motion has been pending. That is, assuming Defendant requested relief on April 15, 2020, he has effectively fulfilled the exhaustion requirement in the meantime.[7] Rather than simply denying the request without prejudice to re-filing, the court will construe the motion as having been filed on May 16, 2020. Indeed, many courts have proceeded to decide compassionate relief motions where the 30-day period had lapsed while a motion was pending. *See, e.g.*, *United States v. Johnson*, 2020 WL 2307306, at *4 (E.D. Cal. May 8, 2020) ("The court need not resolve any question of statutory construction here, because as of the date of this order, 30 days have passed since the date defendant administratively filed his reduction in sentence request. . . . [T]he court assumes defendant has exhausted without reaching the question of how to interpret the statutory text of § 3582(c)(1), and proceeds to consider the merits of the motion below."); *United States v. Hinz*, 2020 WL

---

[7] Given his situation, it would be difficult for Defendant to prove at this stage that the Warden actually received his request. Defendant states that he has no access to a copy machine "to back up what I am stating," ECF No. 363 at PageID #3338, and that in March 2020 prison staff removed most of his legal material and documents from a "legal locker." ECF No. 363-4 at PageID #3342.

2319924, at *1 (E.D. Cal. May 11, 2020) ("As of the date of this Order, 30 days have passed since Defendant filed his request. Therefore, Defendant has now met the exhaustion requirement."); *United States v. Simpson*, 2020 WL 2323055, at *2 (N.D. Cal. May 11, 2020) (granting compassionate release motion, effective after the 30-day period will lapse from when exhaustion was sought). Thus, rather than requiring Defendant to submit proof of exhaustion, the court will proceed based on the allegations of the motion and address Defendant's request on its merits.

**C.   Defendant has not Established "Extraordinary and Compelling Reasons" to Justify Immediate Release or Home Confinement.**

As set forth above, the court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)," 18 U.S.C. § 3582(c)(1)(A), after:

> 1) "considering the factors set forth in section 3553(a) to the extent that they are applicable," *id.*, and
>
> 2) if it finds that "extraordinary and compelling reasons warrant such a reduction," 18 U.S.C. § 3582(c)(1)(A)(i), and that
>
> 3) a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission."

18 U.S.C. § 3582(c)(1)(A).

Although the statute does not define "extraordinary and compelling circumstance," application note 1 to United States Sentencing Commission Guideline § 1B1.13 states that extraordinary and compelling reasons exist under any of the following circumstances:

> (A) Medical Condition of the Defendant.
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> > (ii) The defendant is
> >
> > > (I) suffering from a serious physical or medical condition,
> > > (II) suffering from a serious functional or cognitive impairment, or
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons. As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 application note 1. The Sentencing Commission also requires that the defendant not pose a danger to the safety of the community. *Id.* at § 1B1.13(2). *See, e.g.*, *United States v. Vo*, 2020 WL 2300101, at *1-2 (N.D. Cal. May 7, 2020) (setting forth these definitions and applying them to release an inmate for COVID-19 reasons).

Additionally, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement[.]" *United States v. Eberhart*, 2020 WL 1450745, *2 (N.D. Cal. Mar. 25, 2020). And "[t]he length of the sentence remaining is an additional factor to consider in any compassionate release analysis." *Connell*, 2020 WL 2315858, at *6.

Applying those factors, Defendant lacks "extraordinary and compelling reasons" to justify compassionate release. Although the court has little doubt that the health of inmates at FCI Terminal Island is in danger due to the COVID-19 pandemic, Defendant simply does not meet the criteria. He is 37 years old, with no demonstrated risk factors (even assuming he falls into a category of obese, weighing 200 pounds at 5' 8" tall). *See, e.g.*, *United States v. Jones*, 2020 WL 2331678, at *5 (D. Haw. May 11, 2020) ("Those at high risk for severe illness from COVID-19 are: people sixty-five years old or older; people living in a nursing home or long-term care facility; and people of all ages with underlying medical conditions, including chronic lung disease, serious heart conditions, diabetes, chronic kidney disease undergoing dialysis, liver disease, or who are immunocompromised.") (citing Centers for Disease Control and Prevention, Coronavirus Disease 2019, People Who Are At Higher Risk, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html). Additionally, according to the BOP's inmate locator, Defendant still has nearly 15 years remaining on his sentence, with a projected release date of January 29, 2035. *See* https://www.bop.gov/mobile/find_inmate/byname.jsp (Jacob Drummondo-Farias) (last accessed May 19, 2020).

The 18 U.S.C. § 3553(a) factors also counsel against release. The instant conviction is Defendant's second federal felony drug offense—in 2004, he was convicted of possession with intent to distribute 5 grams or more of methamphetamine. *See* Presentence Investigation Report, ECF No. 258 at PageID #1339. His supervised release was revoked in that earlier case for multiple violations, and he was on supervised release when he committed the instant offense. *Id*. at PageID #1339-41. Finally, the court applied an upward adjustment of three levels under United States Sentencing Guideline § 3B1.1(b) based on Defendant's role in the instant offense. *See* ECF No. 353 at PageID #3292-95. In short, Defendant's history does not suggest that he will not reoffend if released.

Thus, even assuming that, as he alleges, Defendant is non-violent, has a commendable prison record, and has a family member willing to assist with home confinement, the court nevertheless finds he does not meet the criteria for compassionate release.

///

///

///

///

///

## IV. **CONCLUSION**

For the foregoing reasons, Defendant's motion for compassionate release, ECF No. 363, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 19, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Drummondo-Farias*, Crim. No. 12-00174 JMS, Order Denying Defendant's Motion for Compassionate Release, ECF No. 363